IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

DAVID PATTESON,                    )
                                   )
      Plaintiff,                   )
                                   )
v.                                 )
                                   )   No. 09-2085 Ma/P
McADAMS TAX ADVISORY GROUP, LLC,   )
GREGORY GIBSON, ALLIANZ LIFE       )
INSURANCE COMPANY OF NORTH         )
AMERICA, GENWORTH FINANCIAL        )
TRUST COMPANY, INVESTORS CAPITAL   )
CORP., and Unknown and Unnamed     )
Individuals,                       )
                                   )
      Defendants.                  )

_____

REPORT AND RECOMMENDATION
_____

Before the court by order of reference is defendants Investors Capital Corporation ("ICC"), McAdams Tax Advisory Group, LLC ("McAdams"), and Gregory L. Gibson's (collectively "the McAdams Defendants") Motion to Dismiss Complaint and Compel Arbitration or Alternatively, to Stay Proceedings. (D.E. 8.) For the reasons below, the court recommends that the motion to compel be granted and that all claims against the McAdams Defendants be dismissed without prejudice.[1]

_____

[1]Some courts have held that motions to compel arbitration are dispositive motions, while other courts have treated them as nondispostive motions. Compare Costello v. Patterson Dental Supply, Inc., No. 5:06-CV-213, 2007 WL 4178942, at *3 (W.D. Mich. Nov. 20, 2007) (dispositive motion), JTH Tax, Inc. v. Lee, No.

## I.  PROPOSED FINDINGS OF FACT

The following facts are based on Patteson's complaint, the Investor Profile and New Account Agreement, the affidavit of Gregory L. Gibson, and Patteson's response in opposition to the motion to compel.[2]

In March of 2007, David Patteson, a retiree who at the time was in his seventies, received a solicitation from Gregory Gibson, an investment advisor employed by ICC and McAdams, to prepare his taxes at a reduced rate of $50.00.  In response to this solicitation, Patteson met with Gibson in June of 2007.  Patteson told Gibson that he had $210,780.29 invested in a retirement account with the Lincoln Financial Group, and that the account contained a five-year surrender penalty which would expire approximately thirty days from the date of their meeting.  During

---

2:06cv486, 2007 WL 1795751, at *1-2 (E.D. Va. June 19, 2007) (same), and Flannery v. Tri-State Div., 402 F. Supp. 2d 819, 821 (E.D. Mich. 2005) (same), with Gonzalez v. GE Group Adm'rs, Inc., 321 F. Supp. 2d 165, 166-67 (D. Mass. 2004) (nondispositive), Third Millennium Techs., Inc. v. Bentley Sys., No. 03-1145-JTM, 2003 WL 22003097, at *1 (D. Kan. Aug. 21, 2003) (same), and Herko v. Metro. Life Ins. Co., 978 F. Supp. 141, 142 n.1 (W.D.N.Y. Jan. 29, 1997) (same).  Out of an abundance of caution, this court submits a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) & (C).

[2]The court may consider matters beyond the pleadings in resolving motions to compel arbitration.  See Capitol Leasing Co. v. Fed. Deposit Ins. Corp., 999 F.2d 188, 191 (7th Cir. 1993); Jann v. Interplastic Corp., 631 F. Supp. 2d 1161, 1162 n.1 (D. Minn. 2009); Safranek v. Copart, Inc., 379 F. Supp. 2d 927, 928 (N.D. Ill. 2005); Boulet v. Bangor Sec. Inc., 324 F. Supp. 2d 120, 123-24 (D. Me. 2004).

that meeting, Gibson persuaded Patteson to allow him to reinvest the funds in Patteson's retirement account.  Patteson alleges that he insisted that any new investment with the defendants be put in a low-risk investment vehicle that would not penalize him for withdrawing funds.

During his June 2007 meeting with Gibson, Patteson opened an investment account with ICC.  Gibson obtained information from Patteson and prepared for him a four-page Investor Profile and New Account Agreement ("Agreement"), which Patteson and Gibson signed and dated.[3] (D.E. 8-2, Aff. of Gregory L. Gibson ¶ 2.)  The following paragraph, typed in all capital letters, appeared directly above their signatures on page two of the Agreement:

<b>Signatures</b>

> I REPRESENT THAT I HAVE READ THE ATTACHED TERMS AND CONDITIONS GOVERNING THIS ACCOUNT (THE AGREEMENT) AND AGREE TO BE BOUND BY SUCH TERMS AND CONDITIONS AS CURRENTLY IN EFFECT AND AS BE AMENDED FROM TIME TO TIME. **BY SIGNING BELOW I AKNOWLEDGE [sic] THAT THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE, WHICH IS LOCATED IN PARAGRAPHS 13 AND 14 IN THIS AGREEMENT AND FURTHER AKNOWLEDGE [sic] THAT I HAVE RECEIVED A COPY OF THE AGREEMENT AND HAVE BEEN PROVIDED OR WILL BE PROVIDED WITHIN 30 DAYS, A COPY OF THIS COMPLETE INVESTOR PROFILE.**

---

[3]Patteson apparently questions the authenticity of the Agreement by pointing out in his response to the motion to compel that although pages three and four of the Agreement indicate "Page 3 of 4" and "Page 4 of 4," pages one and two indicate "Page 1 of 2" and "Page 2 of 2," instead of "Page 1 of 4" and "Page 2 of 4."  However, Gibson's affidavit states "[a]ttached as Exhibit A to this Affidavit is a true and correct copy of the [Agreement] executed by Mr. Patteson on June 11, 2007," and Patteson has not presented any evidence to challenge Gibson's affidavit.

-3-

```
_____     _____
Customer Signature       Date       Customer Signature       Date
_____     _____
Representative Signature  Date       Principal Signature      Date
```

(D.E. 8-2 at 14.)  The sentence beginning "BY SIGNING BELOW . . ."
appeared in bold lettering.  None of the other provisions on pages
one and two were typed in all capital letters.

The third and fourth pages of the Agreement, titled "Customer
Account Agreement – Terms and Conditions" ("Terms and Conditions")
contained the terms and conditions referenced on page two.
Paragraph 13 of the Terms and Conditions, found on page three,
stated in all capital letters as follows:

13.  ARBITRATION DISCLOSURES

THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE.
BY SIGNING AN ARBITRATION AGREEMENT THE PARTIES AGREE AS
FOLLOWS:
• ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT
TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A
TRIAL BY JURY, EXCEPT AS PROVIDED BY THE RULES OF THE
ARBITRATION FORUM IN WHICH A CLAIM IS FILED.
• ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING: A
PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY
ARBITRATION AWARD IS VERY LIMITED.
• THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS
STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED
IN ARBITRATION THAN IN COURT PROCEEDINGS.
• THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S)
FOR THEIR AWARD.
• THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A
MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH
THE SECURITIES INDUSTRY.
• THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME
LIMITS FOR BRINGING A CLAIM IN ARBITRATION.  IN SOME
CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE
BROUGHT IN COURT.
• THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM
IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE
INCORPORATED INTO THIS AGREEMENT.

(Id. at 15.)  Paragraph 14 of the Terms and Conditions, located on page four, stated in all capital letters as follows:

14.  ARBITRATION AGREEMENT

ANY CONTROVERSY BETWEEN YOU AND US SHALL BE SUBMITTED TO ARBITRATION BEFORE THE NEW YORK STOCK EXCHANGE, INC., ANY OTHER NATIONAL SECURITIES EXCHANGE ON WHICH A TRANSACTION GIVING RISE TO THE CLAIM TOOK PLACE (AND ONLY BEFORE SUCH EXCHANGE), OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. . . .

(Id. at 16.)  None of the other provisions on pages three and four were typed in all capital letters.

Patteson alleges that after he signed the Agreement, Gibson failed to follow his instructions and placed Patteson's money in high risk investments with defendants Allianz Life Insurance Company of North America and Genworth Financial Trust Company.[4]  In addition, Patteson alleges that, contrary to his instructions, Gibson invested the money in accounts that subjected him to new surrender penalties and withdrawal fees.  As a result, Patteson filed a complaint on February 20, 2009, alleging that the defendants violated the Securities Investor Protection Act, 15 U.S.C. § 78a *et seq.*, the Tennessee Consumer Protection Act, Tenn. Code. Ann. §§ 47-18-109 and 47-18-125, and the Tennessee Insurance Code, Tenn. Code. Ann. § 56-8-104.  He also alleges causes of action for negligence, detrimental reliance, conversion, and breach

---

[4]The other defendants have not asserted that the arbitration provision governs the claims brought against them.  Allianz Life Insurance has filed a motion to dismiss on other grounds.

-5-

of fiduciary duty against the defendants.

In response, the McAdams Defendants filed the instant Motion to Dismiss Complaint and Compel Arbitration or Alternatively, to Stay Proceedings.  They ask the court to either dismiss or stay the present litigation and order the parties to proceed to arbitration as required by the Agreement.

## II.  PROPOSED CONCLUSIONS OF LAW

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The FAA was enacted with the purpose "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements on the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991). When a party files a motion to compel arbitration, the court "must follow the procedure set forth in section 4 of the FAA."[5]

---

[5]Section 4 of the FAA does not require an evidentiary hearing. Thus, the court submits this report and recommendation based on the parties' submissions.  See Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co., 706 F.2d 155, 159 (6th Cir. 1983) (stating that § 4 does not require an evidentiary hearing); see also Armstrong v. Assocs. Int'l Holdings Corp., No. 06-11177, 2007 WL 2114512, at *4 (5th Cir. July 24, 2007) (concluding that district court was not required to conduct an evidentiary hearing before compelling the parties to proceed to arbitration); Marks 3-Zet-Ernst Marks Gmbh & Co. KG v. Presstek, Inc., 455 F.3d 7, 14 (1st Cir. 2006) (stating that under § 4 "a 'hearing' on the papers may be all that is

Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc., 350 F.3d 568, 573 (6th Cir. 2003).   Section 4 provides as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed . . . . [U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4; see also Great Earth Cos. v. Simons, 288 F.3d 878, 889 (6th Cir. 2002).   As this court stated in Terry v. Labor Ready, Inc., No. 02-1035, 2002 WL 1477213 (W.D. Tenn. July 2, 2002),

> Under the Federal Arbitration Act, a district court must stay proceedings if satisfied that the parties have agreed in writing to arbitrate the issue(s) presented in the lawsuit.  The district court has no discretion to refuse to compel arbitration if the court finds that the parties have so agreed.  Any limitation of an arbitration provision must be read narrowly in order to effectuate the strong national policy of favoring enforcement of agreements to arbitrate, and any doubts must be resolved in favor of arbitration.  Arbitration should be ordered unless it can be said that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

Id. at *1 (internal citations omitted); see also Fazio v. Lehman Bros., 340 F.3d 386, 392 (6th Cir. 2003).   Patteson, as the party opposing arbitration, carries the burden of proving that the claims

---

required") (citing Cincinnati Gas & Elec. Co., 706 F.2d at 159); Acosta v. Fair Isaac Corp., No. 3:09-CV-0378, 2009 WL 3487833, at *2 (N.D. Tex. Oct. 28, 2009) (stating that there is "no requirement that an evidentiary hearing be convened on motions to compel arbitration").

-7-

at issue are unsuitable for arbitration.  See Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 91 (2000); Johnson v. Long John Silver's Rests., Inc., 320 F. Supp. 2d 656, 667 (M.D. Tenn. 2004); Terry, 2002 WL 1477213, at *1, *3 (citing Gilmer, 500 U.S. 20).

In determining whether to grant a motion to compel arbitration, the court must consider whether the arbitration provision is valid and enforceable.  Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 665-66 (6th Cir. 2003).  The court must then consider whether the dispute falls within the scope of the provision.  Javitch v. First Union Sec., Inc., 315 F.3d 619, 624 (6th Cir. 2003).

The court finds that the arbitration provision is valid and enforceable, and that Patteson's claims against the McAdams Defendants are covered by the provision.  When Patteson entered into the investment relationship, he signed the Agreement which contained the arbitration provision.  Specifically, located directly above his signature was a paragraph that clearly stated (in bold and capital letters) that he acknowledged the Agreement contained a predispute arbitration clause located in paragraphs 13 and 14 of the Agreement.  Paragraphs 13 and 14 set forth (in all capital letters) the terms of the arbitration provision, which included submitting "ANY CONTROVERSY BETWEEN YOU AND US . . . TO ARBITRATION."  (D.E. 8-2 at 16.)  This broad language covers all claims relating to the investment relationship.  See Terry, 2002 WL

-8-

1477213, at *1 (stating that "[w]hen a contract contains a broad arbitration clause covering all controversies arising under the agreement, arbitration must be ordered unless the party seeking to avoid it can show that the particular dispute was expressly excluded") (citing <u>Cincinnati Gas & Elec. Co.</u>, 706 F.2d at 160). In other cases where investors have entered into similarly worded arbitration agreements with their investment advisors, courts have compelled the parties to arbitrate all of their claims. <u>See, e.g.,</u> <u>Safer v. Nelson Fin. Group, Inc.</u>, 422 F.3d 289, 292-93, 297-98 (5th Cir. 2005); <u>Wald v. 1 Fin. Marketplace Sec., L.L.C.</u>, No. 2:09-cv-1116, 2009 WL 3209930, at *2, *9 (E.D. Pa. Oct. 5, 2009); <u>Al-Thani v. Wells Fargo & Co.</u>, No. C 08-1745, 2009 WL 55442, at *2-3 (N.D. Cal. Jan. 7, 2009); <u>Shammami v. Broad Street Sec., Inc.</u>, 544 F. Supp. 2d 585, 586 (E.D. Mich. 2008). Therefore, Patteson must arbitrate all of the claims that he now seeks to bring against the McAdams Defendants in this lawsuit.[6]

---

[6]Although defendant McAdams is not a signatory to the Agreement, it is well settled that "[n]on-signatories to an arbitration agreement may be bound by or enforce an arbitration agreement executed by other parties under theories arising out of common law principles of contract and agency law." <u>Broaddus v. Rivergate Acquisitions, Inc.</u>, No. 3:08-0805, 2008 WL 4525410, at *2 (M.D. Tenn. Oct. 1, 2008) (citations omitted); <u>see also</u> <u>E.I. Dupont De Nemours & Co. v. Phone Poulenc Fiber & Resin Intermediates, S.A.A.</u>, 269 F.3d 187, 198 (3d Cir. 2001). "When an agency relationship has been established, the principal may be bound by the acts of the agent performed on the principal's behalf and within the actual or apparent scope of the agency." <u>Creech v. Addington</u>, 281 S.W.3d 363, 373 (Tenn. 2009). Patteson alleges in his complaint that Gibson is an agent of McAdams, and the allegations establish that there is a clear and close nexus between Gibson and McAdams and

In his response in opposition to the motion to compel, Patteson attempts to challenge the arbitration provision on three state law grounds.[7]  First, he argues that the arbitration agreement should not be enforced because it is an adhesion contract.  Tennessee law defines a contract of adhesion as "a standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract." Buraczynski v. Eyring, 919 S.W.2d 314, 320 (Tenn. 1996) (citations omitted).  Although the Agreement in this case is a standardized contract, it is not a contract of adhesion.  The Sixth Circuit has

that Patteson's claims arise in large part out of Gibson's alleged conduct. Wald, 2009 WL 3209930, at *6. Moreover, in his response in opposition to the motion to compel arbitration, Patteson raises no objections to McAdams's ability to enforce the arbitration agreement, even though the issue was raised in the motion to compel arbitration.  McAdams is therefore entitled to enforce the arbitration provision.

[7]In analyzing Patteson's state law grounds for challenging the arbitration provision, the court applies Tennessee law.  In Tennessee, "a contract is presumed to be made with reference to the law of the place where it was entered into unless it appears it was entered into in good faith with reference to the law of some other state." Ohio Cas. Ins. Co. v. Travelers Indem. Ins. Co., 493 S.W.2d 465, 467 (Tenn. 1973) (citations omitted).  "Tennessee generally applies the lex loci contractus, but sometimes it applies the law of the place of performance." Cooper v. MRM Inv. Co., 367 F.3d 493, 499 (6th Cir. 2004).  Here, Tennessee is the location where the Agreement was executed, where Gibson performed on the Agreement, and where the alleged mismanagement of Patteson's investments occurred.

determined that "[a] contract is not adhesive merely because it is a standardized form offered on a take-it-or-leave-it basis," and that "[e]ven after Buraczynski, Tennessee courts decline to find arbitration provisions adhesive where the consumer fails to prove that refusal to sign would cause some detriment other than not being able to buy from the particular merchant (such as not being able to obtain the goods or services elsewhere)." Cooper, 367 F.3d at 500; see also Davis v. Morningside of Jackson, L.L.C., No. 1:05-CV-1284, 2006 WL 889325, at *4 (W.D. Tenn. Mar. 28, 2006) (stating that although "adhesion contracts typically *involve* boilerplate, take-it-or-leave-it terms offered by a 'superior' party, the 'distinctive' indicia of a true adhesion contract is that 'the weaker party has no realistic choice as to [the] terms") (citations omitted); Wallace v. Nat'l Bank of Commerce, 938 S.W.2d 684, 687-88 (Tenn. 1997) (finding no contract of adhesion where "there is no showing in the record that the customers had no realistic choice but to acquiesce in the imposition of the bank's charges . . . [and] no showing that the fees were the same at all the defendant banks or that banking services could not be obtained from other institutions"); Pyburn v. Bill Heard Chevrolet, 63 S.W.3d 351, 359-60 (Tenn. Ct. App. 2001) (finding arbitration agreement between car dealer and buyer was not adhesive, as there was no evidence that the buyer's refusal to agree would have caused some detriment other than being unable to come to terms with the particular dealer).

-11-

Patteson has not alleged, much less presented any evidence to show, that he would have been unable to find other investment services had he refused to sign the Agreement. Cooper, 367 F.3d at 502-03. Therefore, Patteson has not shown that the arbitration agreement is a contract of adhesion.

Second, Patteson argues that the arbitration term of the contract is unconscionable. Tennessee recognizes two types of unconscionability:

> Unconscionability may arise from a lack of a meaningful choice on the part of one party (procedural unconscionability) or from contract terms that are unreasonably harsh (substantive unconscionability). In Tennessee we have tended to lump the two together and speak of unconscionability resulting when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other.

Trinity Indus., Inc. v. McKinnon Bridge Co., 77 S.W.3d 159, 170-71 (Tenn. Ct. App. 2001) (citations omitted).

Patteson does not specifically address procedural unconscionability in his response, but he implies that because he had little bargaining power, it follows that he had little meaningful choice. While inequality of bargaining power is relevant to the procedural unconscionability analysis, the party opposing enforcement of the contract must present evidence on "factors bearing on the relative bargaining position of the contracting parties, including their age, education, intelligence,

business acumen and experience, relative bargaining power . . . [and] whether the terms were explained to the weaker party." Cooper, 367 F.3d at 504 (quoting Morrison, 317 F.3d at 666). As to his age, Patteson alleges that he is retired and, in 2007, was in his seventies. (D.E. 1 at 3.) As to his business or investment experience, it appears that Patteson has some investment experience, as he had an investment account with Lincoln Financial Group at the time he initiated an investment relationship with the defendants. (Id. at 5.) However, he has not presented the court with any evidence, by affidavit or otherwise, relating to the other relevant factors.

As for substantive unconscionability, "[a] contract is substantively unconscionable . . . when its terms 'are beyond the reasonable expectations of an ordinary person, or oppressive.'" Cooper, 367 F.3d at 504 (quoting Buraczynski, 919 S.W.2d at 320). Patteson has simply not shown that the arbitration provision is oppressive, unreasonably harsh, or unfair. See Howell v. Rivergate Toyota, Inc., 144 F. App'x 475, 479 (6th Cir. 2005) (finding the "terms of the arbitration agreement . . . are not so one-sided . . . that an ordinary person would regard them as unreasonable, oppressive, or unconscionable"). The court concludes that Patteson has not demonstrated that the arbitration provision is unconscionable.

Finally, Patteson argues that the contract lacks mutual

-13-

assent, contending that his signature "only appears on the form which refers to a 'Predispute Arbitration Clause,'" and that his signature "is not on the actual agreement which outlines the terms of this 'Predispute Arbitration Clause.'" (D.E. 19 at 4.) "In determining mutuality of assent, courts use an objective standard based on the manifestations of the parties." T.R. Mills Contractors, Inc. v. WRH Enters., L.L.C., 93 S.W.3d 861, 866 (Tenn. Ct. App. 2002). Under Tennessee law, "a party is obligated to be bound by the terms of an agreement he or she signs." Plyler v. BDO Seidman, L.L.P., No. 04-2146, 2004 WL 5039850, at *7 (W.D. Tenn. Dec. 15, 2004). "If a person 'fails to read the contract or otherwise learn of its contents, he signs the same at his peril and is estopped to deny his obligations, will be conclusively presumed to know the contents of the contract, and must suffer the consequences of his own negligence." Id. (quoting Giles v. Allstate Ins. Co., 871 S.W.2d 154, 156 (Tenn. Ct. App. 1993)). "It is not up to the Court to notify Plaintiffs of a specific incorporated provision within a contract . . . ." Id.

As discussed earlier, Patteson's signature on the Agreement appears immediately below the paragraph that clearly stated that the Agreement contains a predispute arbitration clause in paragraphs 13 and 14. Although Patteson did not sign pages three or four, those pages do not contain any signature lines, and in any event, a separate signature on those pages was not required to

-14-

trigger the arbitration provision.  Patteson has not shown that he was denied a fair opportunity to read over the Agreement or that Gibson deceived him in any way regarding the arbitration provision.

### III.   RECOMMENDATION

For the reasons above, it is recommended that the motion to compel arbitration be granted and that the claims against the McAdams Defendants be dismissed without prejudice.[8]

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

February 14, 2010
Date

### NOTICE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C).  FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**

---

[8]As all claims against the McAdams Defendants are subject to arbitration, the court may dismiss the claims against these defendants without prejudice.  See Green v. Ameritech Corp., 200 F.3d 967, 973 (6th Cir. 2000).