```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF TENNESSEE
                     WESTERN DIVISION
```

| | |
|---|---|
| DAVID PATTESON, ) | |
| ) | |
|    Plaintiff, ) | Case No. 09-2085 |
| ) | |
| v. ) | |
| ) | |
| McADAMS TAX ADVISORY GROUP, LLC; ) | |
| GREGORY GIBSON; ALLIANZ LIFE ) | |
| INSURANCE CO. OF NORTH AMERICA; ) | |
| GENWORTH FINANCIAL TRUST CO.; ) | |
| INVESTORS CAPITAL CORP.; and ) | |
| other Unknown Individuals, ) | |
| ) | |
|    Defendants. ) | |

**ORDER DISMISSING CASE <u>SUA</u> <u>SPONTE</u> FOR LACK OF SUBJECT MATTER JURISDICTION**

Plaintiff David Patteson filed suit against Defendants McAdams Tax Advisory Group, LLC ("McAdams"); Allianz Life Insurance Company of North America ("Allianz"); Genworth Financial Trust Company ("Genworth"); Investors Capital Corporation ("Investors Capital"); Gregory Gibson; and other unknown individuals, alleging that they, acting together, caused him to invest his retirement funds in an annuity that did not meet his stated investment goals. Defendants McAdams, Investors Capital, and Gregory Gibson filed a Motion to Compel Arbitration on July 7, 2009, which this Court has referred to Magistrate Judge Tu M. Pham for Report and Recommendation. (<u>See</u> Dkt. No.

8.)  Defendant Allianz Life Insurance Company of North America filed a separate Motion to Dismiss on July 9, 2009.  (See Dkt. No. 9.)  Plaintiff alleges that the Court has both diversity and federal question jurisdiction over his suit.  (Compl. at 2-3.)  Because the Court has determined that it has neither, the Court DISMISSES Patteson's suit for lack of subject matter jurisdiction.

## I.   BACKGROUND

Patteson alleges that in March 2007 he received a solicitation from Gibson and McAdams advertising reduced-cost tax preparation services.  (Id. ¶ 1.)  As a retired individual in his seventies who depends on Social Security and his annuity withdrawals for income, Patteson decided to take advantage of the offer.  (Id. ¶¶ 9, 11.)  While preparing Patteson's taxes, Gibson learned that Patteson had $210,780.29 invested in an annuity with the Lincoln Financial Group.  The five-year surrender penalty on the annuity was about to expire.  (Id. ¶ 10.)  Gibson informed Patteson that he was also a registered broker who could help Patteson earn a better return on his money.  (Id. ¶ 13.)  Patteson stated that his two investment requirements were principal preservation and not having to pay a fee to withdraw money from any new investment.  (Id. ¶ 12.)

Acting pursuant to Gibson's advice, on July 5, 2007, Patteson invested $35,000 in an annuity offered by Defendant

2

Genworth. (Id. ¶ 26.) Defendant Investors Capital was the registered broker for the transaction. (Id.) Despite Plaintiff's instructions and the representations of Gibson and McAdams, the Genworth annuity contained a clause applying a surrender charge to certain withdrawals. (Id. ¶ 28.) On August 9, 2007, Patteson invested an additional $160,319.78 in an annuity offered through Defendant Allianz.[1] (Id. ¶ 19.) Once again, Investors Capital acted as the broker; and the annuity contract contained a penalty for certain withdrawals. (Id. ¶¶ 19, 24.) Plaintiff alleges that neither of these annuities was a suitable investment for him based on his need for access to all of his retirement funds. Because of these transactions, Plaintiff "has suffered the loss of having full access to his funds" and has suffered losses because of "severe market fluctuations." (Id. ¶ 30.)

Plaintiff filed suit on February 20, 2009, alleging a federal cause of action under the Securities Investors Protection Act ("SIPA"), 15 U.S.C. § 78aaa et seq., and state-law causes of action under the Tennessee Consumer Protection Act of 1977, Tenn. Code Ann. § 47-18-109, and under theories of negligence, detrimental reliance, conversion, and breach of fiduciary duties. (Compl. ¶¶ 32-66.) Plaintiff seeks damages

---

[1] These two investments total $195,319.78. The Complaint does not state what happened to the remaining $15,460.51 of the original Lincoln Financial Group annuity proceeds of $210,780.29.

3

of no less than $1 million. (Id. ¶ 32.) Motions to Compel Arbitration and to Dismiss are pending before the Court.

## II.   JURISDICTION

Although no party has questioned this Court's jurisdiction to adjudicate Plaintiff's Complaint, it is axiomatic that "federal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue sua sponte." Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd., 556 F.3d 459, 465 (6th Cir. 2009) (citation omitted); see also Capron v. Van Noorden, 6 U.S. (2 Cranch) 126, 127 (1804) ("[I]t was the duty of the Court to see that they had jurisdiction, for the consent of the parties could not give it."). Plaintiff alleges that this Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1) and federal question jurisdiction under 28 U.S.C. § 1331. Before proceeding with the pending Motions, the Court must assure itself that it has jurisdiction. Answers in Genesis, 556 F.3d at 465.

### A. Complete Diversity Does Not Exist

Patteson's Complaint first alleges that the Court has diversity jurisdiction over his suit. (See Compl. at 2 ("The jurisdiction of this Honorable Court of the matters complained of herein is predicated and founded upon . . . the diversity of citizenship of the parties hereto.") In this case, for the Plaintiff to invoke the Court's diversity jurisdiction, the

4

dispute must be "between . . . [c]itizens of different states," and the amount in controversy must exceed the sum of $75,000. 28 U.S.C. § 1332(a)(1).  The Supreme Court has long interpreted the diversity requirement to mean complete diversity:  no plaintiff and defendant may share the same state of domicile. See Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267 (1806) ("[E]ach distinct interest should be represented by persons, all of whom are entitled to sue, or may be sued, in the federal courts.") (Marshall, C.J.).

Here, the allegations of the Complaint demonstrate the absence of diversity jurisdiction.  Patteson states that he is a resident of Memphis, Tennessee.  (Compl. ¶ 1.)  Defendant McAdams is said to be "a Tennessee Limited Liability Company," and Defendant Gibson is a Tennessee resident.[2]  (Id. ¶¶ 2-3.) Because Plaintiff is a Tennessee resident and at least one Defendant is as well, diversity jurisdiction does not exist. See Strawbridge, 7 U.S. at 267.

---

[2] A limited liability company ("LLC") is an unincorporated entity whose citizenship is the same as the citizenship of each of its partners or members.  Delay v. Rosenthal Collins Group, LLC, 585 F.3d 1003, 1005 (6th Cir. 2009).  Unlike a corporation, an LLC's state of organization and principal place of business are of no consequence for jurisdictional purposes.  Id.  Plaintiff's statement of jurisdiction is inadequate as to McAdams because it fails to state the citizenship of each member of the LLC. If even one member of McAdams is a Tennessee resident, diversity jurisdiction cannot exist in a suit with a Tennessee plaintiff.  See id.  The Court need not order an amended jurisdictional statement, however, because the Complaint alleges that Gibson is also a Tennessee resident.  (Compl. at 2.)  His citizenship alone is enough to destroy diversity.  See Strawbridge, 7 U.S. at 267.

5

**B. Plaintiff's Claims Do Not Arise Under Federal Law**

Patteson next alleges that this Court has jurisdiction under SIPA, 15 U.S.C. §§ 78aaa et seq. (Compl. at 2.) Plaintiff, therefore, alleges that this Court has jurisdiction under 28 U.S.C. § 1331, which provides, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." For a suit to arise under federal law, one of three preconditions must exist: 1) federal law creates the plaintiff's cause of action; 2) plaintiff's right to relief under state law requires resolution of a substantial federal-law question actually in dispute; or 3) the claim is in substance one of federal law. City of Warren v. City of Detroit, 495 F.3d 282, 286 (6th Cir. 2007).

Federal law does not create a cause of action under SIPA. The Supreme Court has expressly held that SIPA creates no private right of action, implied or otherwise. See Sec. Investor Prot. Corp. v. Barbour, 421 U.S. 412, 424 (1975) ("SIPA contains no standards of conduct that a private action could help to enforce, and it contains no general grant of jurisdiction to the district courts."). SIPA, instead, "creates procedures for the orderly liquidation of financially-troubled" brokerage firms. First Fed. Sav. & Loan Ass'n of Toledo v. Fid. & Deposit Co. of Md., 895 F.2d 254, 261 n.5 (6th Cir. 1990).

6

Under SIPA, the Securities Investors Protection Corporation may file an application with the Court to initiate liquidation proceedings. Individual investors may not. Id. Because SIPA does not contain a private right of action, federal law does not create Plaintiff's right to sue.

Plaintiff's suit also does not require resolution of a substantial question of federal law, and his claim is not in substance one of federal law. Although the Supreme Court has declined to establish "a single, precise, all-embracing test" for what cases implicate federal issues important enough to justify jurisdiction under § 1331, it has established certain criteria. Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005). Plaintiff has the burden of pleading facts necessary to establish that his "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. Examining Plaintiff's Complaint, he cannot meet this standard.

Plaintiff's sole reference to federal law is his allegation that Gibson's representations to him that the annuities were safe investments that would allow him to withdraw his money at will without penalty "constitute false and misleading statements and deceptive acts as defined in" SIPA. (Compl. ¶ 32.)

7

However, as noted above, SIPA does not create a private right of action. Barbour, 421 U.S. at 425. More importantly, it is not necessary for the Court to determine that the Defendants have violated some principle of federal securities law for Patteson to succeed in his suit. See City of Warren, 495 F.3d at 286; cf. Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 200-202 (1921) (finding federal question jurisdiction where plaintiff alleged that defendant could not, under state law, legally purchase Federal bonds because the Federal Government's issuance of those bonds was unconstitutional). Plaintiff can succeed on his state-law causes of action for negligence, detrimental reliance, conversion, breach of fiduciary duty, and violation of the Tennessee Consumer Protection Act without establishing that Defendants have violated a provision of federal law. For example, to prove misrepresentation, Plaintiff need only demonstrate that:

> 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation.

Walker v. Sunrise Pontiac-GMC Truck, Inc., 249 S.W.3d 301, 311 (Tenn. 2008). Plaintiff's well-pled Complaint, therefore, states no substantial federal statute or issue on whose

8

interpretation his suit's success would turn. See Grable & Sons, 545 U.S. at 313 (noting that it must appear from the complaint that plaintiff's right to relief depends on the construction or application of federal law). Because Plaintiff's Complaint does not raise a substantial federal issue, this Court does not have jurisdiction under § 1331.[3] See id.

### III. CONCLUSION

The Court, having exercised its independent duty to satisfy itself that it has jurisdiction over the present matter, has determined that Plaintiff's suit cannot be maintained under diversity or federal question jurisdiction. See Answers in Genesis, 556 F.3d at 465. Without jurisdiction, the Court is without authority to adjudicate the present dispute; therefore, the Court DISMISSES Plaintiff's Complaint. See Capron, 6 U.S. at 127.

So ordered this 24th day of February, 2010.

---

[3] Defendants' assertion that Plaintiff's claims are subject to a binding agreement to arbitrate cannot provide this Court with jurisdiction under the Federal Arbitration Act, 9 U.S.C. §§ 1-307. The Federal Arbitration Act is not an independent source of jurisdiction. It only confers authority to issue a motion to compel arbitration where a district court would otherwise have original jurisdiction. See 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action."); Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 26 n.32 (1983) ("The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U. S. C. § 1331 or otherwise.")

                                      s/ Samuel H. Mays, Jr.
                                      SAMUEL H. MAYS, JR.
                                      UNITED STATES DISTRICT JUDGE